CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (808) 326-4800
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
Bodyguard Productions, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Bodyguard Productions, Inc. | **Case No.: 19-cv-139** |
| | (Copyright) |
| Plaintiff, | |
| vs. | **COMPLAINT; EXHIBITS 1-3** |
| | |
| Alex Musante | **(1) DIRECT COPYRIGHT INFRINGEMENT** |
| Defendant. | **(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |
| | **(3) DEMAND FOR JURY TRIAL** |

## <u>COMPLAINT</u>

Plaintiff Bodyguard Productions, Inc. ("Plaintiff") files this Complaint against

Defendant Alex Musante ("Defendant") and alleges as follows:

## I.      NATURE OF THE ACTION

1.      This matter arises under the United States Copyright Act of 1976, as

20-005F

amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2.    The Plaintiff alleges that Defendant is liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§106 and 501; and, (2) contributory copyright infringement.

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.    Defendant either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction.  As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over each.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) upon information and belief, the Defendant resides, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendant resides or may be found in this District.

## III.   PARTIES

20-011L

6.      Plaintiff is a Nevada corporation with principal offices in Los Angeles, California.

7.      Plaintiff is an affiliate of Millennium Funding, Inc. (Millennium). Millennium is a production company and distributor of a notable catalog of major motion pictures.  (www.millenniumfilms.com).

8.      Plaintiff is the owner of the copyright for the motion picture in the Work *"The Hitman's Bodyguard"*, (hereafter: the "Work") a major motion picture released in 2017.

9.      The Work is an action movie directed by Patrick Hughes, and stars Ryan Reynolds as the world's top bodyguard, and Samuel L. Jackson as a hitman and his new client.  The Work tells the story of how the hitman and the bodyguard must put aside their difference and work together so that the hitman can testify at the International Court of Justice.

10.     The Defendant is a member of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is: SHA1: 19A41E2D9425C1809EFE7FB0B4571C372F495E76      (the     "Unique     Hash Number") shown in Exhibit 1.

11.     Defendant infringed the Work on at least 2018-03-15 10:02:19 at

Internet Protocol ("IP") address 174.239.2.217 as shown in Exhibit 1.

12.     Defendant was also observed to be sharing copies of the Work at three other IP addresses as shown in Exhibit 1.

13.     All of the four IP addresses shown in Exhibit 1 were associated with the Internet Service Provider ("ISP") Verizon Wireless.

14.     Verizon Wireless has indicated that the four IP addresses shown in Exhibit 1 were assigned to the account of Cindy Moyer at the time instances of infringement.

15.     Upon information and belief, Cindy Moyer is not a resident of Hawaii and is rather a resident of Pennsylvania.

16.     Upon information and belief, Defendant is the son of Cindy Moyer and controlled a telephone number and phone associated with the account of Cindy Moyer.

17.     Upon information and belief, Defendant is a member of the United States Navy and was stationed at Hawaii at least during the times of the four instances of infringements shown in Exhibit 1.

18.     Plaintiff alleges on information and belief that the Defendant named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged herein, and is liable to Plaintiff for the damages and relief sought herein.

20-011L

19.    Plaintiff's agent sent to Verizon Wireless multiple notices per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting Defendant to stop the infringements of the Works.

20.    Upon information and belief, Verizon Wireless sent these DMCA notices to Cindy Moyer, thereby putting Defendant on notice regarding these notices.

21.    Defendant continued to infringe the Work after Cindy Moyer received all or some of the notices.

22.    Defendant continued to participate in the trafficking of copyrighted content via the BitTorrent client application subsequent to Plaintiff sending the DMCA notices with the selection and download of new content in violation of the Copyright Act.

23.    Defendant is either a direct or contributory infringer all as more particularly described below.

## V.    FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyright to the Work

24.    The Plaintiff is the owner of the copyright for the motion picture for the Work entitled "*The Hitman's Bodyguard*", a major motion picture released in 2017.

25.    The Work is the subject of copyright registration (Registration Number

20-011L

PAu 3-844-508) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "2".

26.    The Work is currently offered for sale in commerce.

27.    Defendant had notice of Plaintiff's rights through at least the credits indicated in the content of the motion picture which bore a proper copyright notice. *See* Exhibit "3".

28.    Defendant also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice

### B. The Defendant Used BitTorrent To Infringe the Plaintiff's Copyright

29.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

30.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

20-011L

### 1. *Defendant Installed a BitTorrent Client onto his Computer*

31.     A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

32.     Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

33.     According to the BitTorrent Peer ID convention, the BitTorrent Client sets the Peer ID and the first few characters are reserved to specify the Client application.

34.     Defendant installed a BitTorrent Client onto his or her computer.

### 2. *The Initial Seed, Torrent, Hash and Tracker*

35.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

36.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

37.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier

20-011L

known as a "hash" and records these hash identifiers in the torrent file.

38.    When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

39.    Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

40.    The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

41.    The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

42.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

20-011L

### 3. Torrent Sites

43.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent sites.

44.    Some BitTorrent Clients such as Popcorn Time and Showbox automatically find Torrent Sites for users.

45.    Upon information and belief, Defendant went to a torrent site to upload and download Plaintiff's copyrighted Work.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

46.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

47.    The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

48.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

49.    In this way, all of the peers and seeders are working together in what is called a "swarm."

9

20-011L

50.     Here, Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

51.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

52.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

### *5. The Plaintiff's Computer Investigators Identified Defendant's IP Addresses as a Participant in a Swarm That Was Distributing the Plaintiff's Copyrighted Work*

53.     The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

20-011L

54.   MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

55.   MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: SHA1: 19A41E2D9425C1809EFE7FB0B4571C372F495E76     (the     "Unique     Hash Number") associated with the Work.

56.   The Fourth IP address ("174.239.2.217"), Unique Hash Number, and hit date contained on Exhibit "1" accurately reflect what is contained in the evidence logs and show that Defendant had copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number during a series of transactions.

57.   Through each of the transactions, the Defendant's computer used the identified Fourth IP address to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

58.   MEU's agent analyzed the BitTorrent "pieces" distributed by the Fourth IP address listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

59.   MEU's agent viewed the Work side-by-side with the digital media file

11

20-011L

that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

## VI. FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

60.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

61.   Plaintiff is the copyright owner of the Work which contains an original work of authorship.

62.   By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the registered Work that are original.

63.   The Plaintiff did not authorize, permit, or provide consent to the Defendant to copy, reproduce, redistribute, perform, or display its Work.

64.   As a result of the foregoing, Defendant violated the Plaintiff's exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or

20-011L

process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

65.    The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

66.    By engaging in the infringement alleged in this Complaint, the Defendant deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendant's misconduct therefore offends public policy.

67.    The Plaintiff has suffered damages that were proximately caused by the Defendant's copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

68.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

69.    By participating in the BitTorrent swarm, Defendant induced, caused or materially contributed to the infringing conduct of each other peer member of the swarm.

20-011L

70.    The Plaintiff did not authorize, permit, or provide consent to the Defendant inducing, causing, or materially contributing to the infringing conduct of other peer members in the swarm.

71.    Defendant knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.   Indeed, Defendant directly participated in and therefore materially contributed to other peer members' infringing activities.

72.    The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

73.    By engaging in the contributory infringement alleged in this Complaint, the Defendant deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.   The Defendant's misconduct therefore offends public policy.

74.    The Plaintiff has suffered damages that were proximately caused by the Defendant's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

14

20-011L

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) permanently enjoin Defendant from continuing to infringe the Plaintiff's copyrighted Work;

(B) order that Defendant delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from the computers under Defendant's possession, custody, or control;

(C) order that Defendant delete and permanently remove the copy of the Work Defendant has on the computers under the Defendant's possession, custody, or control;

(D) award the Plaintiff either its actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages in the amount of $150,000 pursuant to 17 U.S.C.  § 504-(a) and (c), whichever is greater;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.


DATED: Kailua-Kona, Hawaii, March 18, 2019.

20-011L

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
Bodyguard Productions, Inc.

20-011L